ALEXANDER, J.,
concurring.
[¶ 21] I concur in and join the Court’s opinion. I write separately to address the important policy issue raised by the Department of Health and Human Services.
[¶22] The Court’s thorough statutory-analysis demonstrates that the private termination of parental rights statute, 18-A M.R.S. § 9-204 (2015), and the private adoption statutes, 18-A M.R.S. §§ 9-301 to 9-315 (2015), combine to allow a private *491 action between a child’s parents to effectively terminate a parent’s obligations to pay child support. These laws can be invoked to exempt a parent from making child support payments, even when the State is paying welfare benefits to provide food, clothing, shelter, and medical care for the child.
[¶23] As the Court’s opinion points out, a State initiated termination of parental rights action pursuant to 22 M.R.S. §§ 4050-4059 (2015) has the same effect, ending a parent’s obligation to pay support for his or her child when his or her parental rights are terminated pursuant to law. Id. § 4056.
[¶24] This result — ending a parent’s obligation to support that parent’s child while the public, through State welfare programs, continues to pay or begins to pay to support the child — is not mandated by the Constitution or any judicial opinion. It is a result of policy choices made by the Legislature reflected in the statutes addressed in the Court’s opinion. These statutory provisions, particularly 22 M.R.S. § 4056, support the goal of termination of parental rights actions, and the corresponding private adoption actions, to end all aspects of a relationship between a child and a biological parent who has demonstrated that he or she is an unfit parent by abandoning or abusing the child, damaging the child, and requiring court intervention to protect the child from further damage.
[¶25] The Department of Health and Human Services in this appeal advocates a valid policy position that a parent who is unfit to parent a child should, nevertheless, remain obligated to pay child support to the Department to reduce the burden on public funds, paid through welfare programs, to support that unfit parent’s biological child. However, the Legislature, not the courts, is the forum in which that issue should be addressed.
[¶ 26] The Department’s concern could be addressed by statutory amendments such as a requirement that parents whose parental rights are terminated continue to pay child support, to the extent of their ability, to the Department of Health and Human Services. The support payments could go into a fund to offset welfare benefits paid to support children in need of public assistance who have no relationship with a biological parent or parents because that relationship has been terminated. Such an arrangement would not result in any contact or legal obligation between the biological parent and the child, but would achieve the Department’s objective to ensure that a biological parent remains responsible and obligated to support his or her child to avoid or reduce the child’s need for public assistance.